UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Chapter 11 |
| MAYUR PATEL a/k/a MIKE PATEL, et al., | Case No. 15-11648 (AMC) (*Jointly Administered*) |
| Debtors. | Hearing Date: December 16, 2015<br>Hearing Time: 11:00 a.m.<br>Hearing Place: Courtroom #5 |
| In re: | Chapter 11 |
| SJM LIMITED, LLC, | Case No. 15-11877 (AMC) (*Jointly Administered*) |
| Debtor. | Hearing Date: December 16, 2015<br>Hearing Time: 11:00 a.m.<br>Hearing Place: Courtroom #5 |

**OBJECTION OF DEBTORS TO PROOFS OF CLAIM OF TORONI REAL
ESTATE PARTNERSHIP (CLAIM NO. 4 AND CLAIM NO. 1)**

Mayur Patel a/k/a Mike Patel ("Patel") and SJM Limited, LLC ("SJM" or collectively with Patel, the "Debtors"), as Debtors and Debtors-in-possession, by and through their counsel, Obermayer Rebmann Maxwell & Hippel LLP, herby object to the proofs of claim of Toroni Real Estate Partnership [Claim No. 4 in the Patel bankruptcy case and Claim No. 1 in the SJM bankruptcy case] (collectively, the "Claims") pursuant to Section 502(b)(6) of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), Rule 3007 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 3007-1, and requests the entry of an order modifying, reducing and expunging the Claims. In support of this Objection, the Debtors respectfully represent as follows:

4978333

I. **JURISDICTION**

1. This Court has jurisdiction over the matters implicated by this Objection pursuant to 28 U.S.C. §§ 157 and 1334. The relief requested by this Objection involves a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), in that the relief requested concerns the allowance or disallowance of claims against the Debtors' estates. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested in this Objection are Section 502 of the Bankruptcy Code and Bankruptcy Rule 3007.

II. **BACKGROUND**

3. On March 10, 2015 (the "Patel Petition Date"), Patel filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (as amended, the "Bankruptcy Code").

4. On March 19, 2015 (the "SJM Petition Date"), SJM filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5. On March 30, 2015, the Debtors filed a motion seeking the joint administration of the Debtors Chapter 11 bankruptcy cases.

6. On May 6, 2015, this Court entered an Order granting joint administration of the Debtors. The cases have not been substantively consolidated.

7. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established in these cases.

8. Patel is an individual and a member in SJM and other related non-debtor entities created for the purpose for owning and/or operating stores as Dunkin' Donuts franchises, gas stations and hotels. Patel is the operations manager for certain Dunkin' Donuts stores.

9. SJM is an entity which was created to own and operate a Dunkin' Donuts franchise located in Wayne, Pennsylvania.

10. The bar date for general non-governmental claims in these bankruptcy proceedings was May 29, 2015.

11. The Debtors filed their joint plan of reorganization (the "Plan") along with the Debtors' disclosure statement ("Disclosure Statement") on September 7, 2015.

12. A hearing to approve the Disclosure Statement has been scheduled for December 16, 2015.

### III. CLAIMS ANALYSIS AND OBJECTIONS

13. Various creditors have filed proofs of claim with the Court setting forth the purported amount due them from the estates.

14. Prior to the commencement of these Chapter 11 case, the Debtors maintained, in the ordinary course of their businesses, books and records that reflected, among other things, their respective liabilities and the amounts owed to their creditors.

15. On or about May 28, 2015, Toroni Real Estate Partnership ("Toroni") filed a proof of claim alleging an general unsecured claim in the amount of One Million Two Hundred Seventy Two Thousand Five Hundred Thirty Eight Dollars ($1,272,538.00) against Patel, as a purported guarantor[2] of a commercial lease of real property, proof of claim number 4 on the Court's Claims Register. A true and correct copy of the claim filed in the Patel case is attached hereto as Exhibit "A" and incorporated herein.

16. On or about May 28, 2015, Toroni filed a proof of claim alleging an general unsecured claim in the amount of One Million Two Hundred Seventy-Two Thousand Five

---

[2] Patel disputes that he is a guarantor, disputes that he was contractually bound to the Lease, disputes that the Lease became effective or that he knowingly and voluntarily agreed in the purported Lease or Guaranty to arbitrate the dispute.

4978333

3

Hundred Thirty Eight Dollars ($1,272,538.00) against SJM, based on a purported Lease for commercial real property, proof of claim number 1 on the Court's Claims Register. A true and correct copy of the claim filed in the SJM case is attached hereto as Exhibit "B" and incorporated herein.

17. SJM and Patel have reviewed their books and records and analyzed the Toroni's Claims. Based upon such review and analysis, the Debtors have determined that grounds exist to object to the allowance and amount of the Claims.

18. Claims No. 4 and No. 1 (the "Claims") filed by Toroni are based on a purported Lease Agreement and Guaranty for commercial real estate located at 535 Lancaster Avenue, Berwyn, Chester County, Pennsylvania, for use as a Dunkin' Donuts Franchise location. A copy of the Lease is attached hereto as Exhibit "C".

19. The Claims seek damages due to termination of the Lease. See Exhibits "A" and "B". The amount alleged in the Claims is allegedly for unpaid rent for the period February 2009 through January 2019, real estate taxes, interest, commissions for a replacement tenant and legal fees, less replacement rent totaling One Million Two Hundred Seventy Two Thousand Five Hundred Thirty Eight Dollars ($1,272,538.00).

20. The Lease was terminated by Toroni, and the property was re-let to Verizon Wireless. The amounts set forth in the Claims are attributable to damages due to a Landlord arising from the termination of the Lease.

21. The Debtors hereby object to the Claims and seek entry of an Order pursuant to Sections 102(1), 105(a) and 502(b)(6) of the Bankruptcy Code and Bankruptcy Rule 3007 modifying and reducing Claims. The Objection is based upon the Debtors' review of the Claims, the commercial lease, and the business records related thereto available to the Debtors.

## IV. **RELIEF REQUESTED**

22. A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). The burden of proof for claims filed in bankruptcy cases rests on different parties at different times. Initially, the claimant must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is prima facie valid. In re Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir. 1992). The burden then shifts to the objector to produce evidence sufficient to contest the validity of the prima facie claim. Id. Thus, the objector must provide credible evidence that negates at least one of the allegations necessary for the claim's legal sufficiency. Id. Finally, if the objector does provide such evidence, the burden shifts back to the claimant to prove the validity of the claim by a preponderance of the evidence. In re Allegheny International, Inc., 954 F.2d at 174.

23. Toroni's Claims must be modified, reduced, and disallowed as the Claims are in excess of the amount permitted under 11 U.S.C. § 502(b)(6) and expunged to the extent they exceed the § 502(b)(6) cap.

24. 11 U.S.C. § 502(b)(6) places the following "cap" on the allowable amount of the landlord's claim in this matter:

> (6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds –
> (A) the rent reserved by such lease, without acceleration for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lese, following the earlier of –
> (i) the date of the filing of the petition; and
> (ii) the date on which such lessor repossessed or the lease surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).

4978333

5

25. The legislative history of 11 U.S.C. § 502(b)(6) sets forth that the congressional intent of the provision and makes clear that the section:

> is designed to compensate the landlord for his loss while not permitting a claim so large (based on a long-term lease) as to prevent other general unsecured creditors from recovering a dividend from the estate.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 353 (1977); see 4 COLLIER ON BANKRUPTCY § 502.LH[3][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

26. "The limitation on damages under § 502(b)(6) is 'absolute' and 'is a limit based on fairness rather than a rule of convenience.'" In re PPI Enters. (U.S.), 324 F.3d 197, 204 (3d Cir. 2003, (citing 4 COLLIER ON BANKRUPTCY § 502.LH[3][b] (Alan N. Resnick & Henry J. Sommer eds. 16th ed.)) .

27. The Debtors' Objection is seeking to prevent Toroni from receiving a windfall; an objective § 502(b)(6) was intended to prevent.

28. Moreover, 11 U.S.C. § 502(b)(6) applies to a landlord/guarantor claim in the same manner as it applies to a landlord/debtor claim. See, e.g., In re Episode USA, Inc., 202 B.R. 691, 695-96 (Bankr. S.D.N.Y. 1996)(finding that § 502(b)(6) limits claims of landlord against guarantor-debtor); see also, In re Farley, Inc., 146 B.R. 739, 745 (Bankr. N.D. Ill 1992); In re Revco D.S., Inc., 138 B.R. 528, 532 (Bankr. N.D. Ohio 1991); In re Rodman, 60 B.R. 334, 334-35 (Bankr. W.D. Okla. 1986).

29. The court in In re Farley, Inc. stated:

> For the purposes of applying § 502(b)(6) to a landlord's claim, it is not legally relevant whether the debtor is defined as 'tenant' or a 'guarantor' of the lease. Section 502(b)(6) does not explicitly limit claims of a landlord against lease guarantors. The statutory language only limits the claim of a 'lessor for damages from the termination of a lease.' However, reading into this provision a distinction between tenants and guarantors is unwarranted, since either tenant or guarantor can be liable for 'damages from the

4978333

6

> termination of a lease.' From the language of § 502(b)(6), it is apparent that it is equally applicable to lessees and guarantors.

In re Farley, Inc., 146 B.R. at 745, citing Oldden v. Tonto Realty Corp., 143 F.2d 916, 921 (2d Cir. 1944) ("the guaranty is a secondary obligation, it must be subject to the same limitations as the primary"). "The purpose of § 502(b)(6) is to compensate the landlord fairly while protecting other creditors. This rational is applicable whether the debtor is the tenant or the guarantor of the lease." Matter of Interco, Inc., 137 B.R. 1003, 1005-06 (Bankr. E.D. No. 1992).

30. Similarly, the court in In re Loewen Group Int.l, Inc., stated "I can see no reason why a guarantor-debtor's obligation on a claim as determined under § 502(b)(6) should be any greater than the underlying obligation of the debtor-obligor." 274 B.R. 427, 442 (Bankr. D.Del. 2002).

31. As a result, if Toroni has an allowed unsecured claim against either SJM or Patel it is limited to one year of the "rent reserved" under the Lease under § 502(b)(6). One year of "rent reserved" under the Lease exceeds 15% of the remaining amount of the "rent reserved" less mitigation. Thus, if the Lease is deemed to be valid and enforceable against the Debtors Toroni's Claims are capped at one year's rent under the terms of the Lease or $90,000 (Initial Rent of $90,000 plus 50% of the real estate taxes, which Toroni alleges was $13,409.90 for which proof is demanded by the Debtors at the hearing on the Objection).

32. Toroni's claim for interest is not permitted under the Lease, nor are attorney's fees, damages, commissions, or other amounts sought by Toroni.

33. Claims for additional amounts due as a result of the termination of a lease are only properly asserted as part of the claim if the additional amounts are considered "rent reserved" under 11 U.S.C. § 502(b)(6). If they are "rent reserved", the one year's worth of each amount is added to the capped amount allowed as part of the claim. If these items are not

4978333

7

considered "rent reserved" under 11 U.S.C. § 502(b)(6), they are not allowed at all as part of Toroni's claim.

34. The oft-cited test for determining whether such additional amounts are considered part of "rent reserved" was enunciated in In re McSheridan, 184 B.R. 91, 99-100 (9th Cir. BAP 1995):

> We hold that the following three-part test must be met for a charge to constitute "rent reserved" under § 502(b)(6)(A):
> 1) The charge must: (1) be designated as "rent" or "additional rent" in the lease; or (b) be provided as a tenant's/lessee's obligation in the lease;
> 2) The charge must be related to the value of the property of the lease thereon; and
> 3) The charge must be properly classifiable as rent because it is a fixed, regular or periodic charge.

See, e.g., In re new Valley Corporation, 2000 U.S. Dist. LEXIS 12663, *40-41 (D.N.J. 2000); In re Rock & Republic Enterprises, Inc., 2001 Bankr. LEXIS 2401, *65-66 (Bankr. S.D.N.Y 2011); In re Foamex International, Inc., 368 B.R. 383, 391-392 (Bankr. D.Del. 2007); In re Andover Togs, Inc., 231 B.R. 521, 540 (Bankr. S.D.N.Y. 1999).

35. Toroni seeks $37,481.35 related to real estate taxes for the remainder of Lease term. While such real estate tax obligations have generally been considered appropriate to be included as part of "rent reserved" for the purposes of 11 U.S.C. § 502(b)(6), this additional component is still subject to the "cap" under that section of the statute. Toroni seeks real estate taxes through the remaining Lease term, including amounts not due or owing for the years 2011, 2017 and 2018. The period of real estate taxes sought is vastly in excess of the one year cap that may be allowed as part of the Claims. In addition, Toroni did not provide any information as to how the real estate taxes were apportioned to the Lease, so there is no basis to determine if the amounts are accurate or appropriate if a portion is to be included in the Claims. The Debtors

4978333

8

respectfully request that the Court disallow the amount sought for the real estate taxes portion of Toroni's claim, as Toroni has presented no support for this portion of its claim.

36. Toroni also seeks to include a compounded interest penalty as a component of its Claims in the amount of $281,232. However, interest is not a component of the rent under the Lease, and does not comport with either the statute or the case law regarding "rent reserve". Thus, any amount owed for interest must be denied in its entirety.

37. Finally, Toroni's Claims also improperly seek to include legal fees, costs and expenses associated with the termination of the Lease, to which Toroni suggests it is entitled. Courts have consistently held that such attorneys' fees and costs related to the termination of the Lease are excluded from "rent reserved" and therefore, under 11 U.S.C. § 502(b)(6), cannot be part of Toroni's Claims. In fact, such claimed damages not only violates the second prong of the McSheridan test discussed above, but it also violates the third prong requiring that the amounts claimed be "a fixed, regular or periodic charge." In re McSheridan, 184 B.R. at 100; see, e.g., In re Smith, 249 B.R. 328, 340 (Bankr. S.D.Ga. 2000)(disallowing attorneys' fees); In re PPI Enterprises (U.S.), Inc., 228 B.R. 399, 349 (Bankr. D.Del. 1998), aff'd, 324 F.3d 197 (3d Cir. 2003). Thus, the attorneys' fees, costs and expenses sought by Toroni must be disallowed as such amounts are not part of "rent reserved".

38. Moreover, the Guaranty does not permit the recovery of attorneys' fees, costs and expenses from the Guarantor:

> That Mayur Patel ("Guarantor"), in consideration of $1.00 and other fair and reasonable consideration, . . . guarantees the full and complete performance of the Lessee under the Lease including . . . the payment for any rent, charges or costs due and owing under this Lease . . . Lessor shall have the same rights to proceed against the Guarantor as is provided to proceed against the Lessee.

See Exhibit "C" at Paragraph 28(h).

4978333

9

39. Therefore, the Guaranty must be strictly construed.

> "Pennsylvania contract law begins with the 'firmly settled' point that 'the intent of the parties to a written contract is contained in the writing itself.'" Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001) [10] (quoting Krizovensky v. Krizovensky, 425 Pa. Super. 204, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)). If the terms of a written contract are clear and unambiguous, construction of the contract is a question of law for the Court. Id. at 92-93. "Guaranty contracts [are] subject to [the] same rules of interpretation as other agreements." Garden State Tanning, Inc. v. Mitchell Mfg. Group Inc., 273 F.3d 332, 335 (3d Cir. 2001); see also Meeting House Lane, Ltd. v. Melso, 427 Pa. Super. 118, 628 A.2d 854, 857 (Pa. Super. Ct. 1993).

Amerisourcebergen Drug Corp. v. Meier, 2004 U.S. Dist. LEXIS 25243 *9-10 (E.D. Pa. Dec. 14, 2004).

40. Nowhere in the guaranty are legal fees ever mentioned. Its provisions cannot be interpreted to include attorneys' fees; there must be an agreement to modify the American Rule that each party pay its own attorneys' fees.

41. It is respectfully submitted that, to the extent the Court determines Toroni's Claims are enforceable against the Debtors or the Debtors' property, the Claims should only be allowed as unsecured claims in an amount not to exceed $90,000.00 pursuant to 11 U.S.C. § 502(b)(6) against each of the Debtors' estates.

## VI.    **RESERVATION OF RIGHTS**

42. The Debtors reserve the right, without any limitation to the grounds, to file (i) additional objections to the Claims; (ii) objections to any claims or interests filed against, or scheduled by the Debtors but not objected to in this Objection; and/or (iii) an adversary proceeding asserting claims against Toroni and its partners or asking for declaratory relief. Separate notice and hearing will be provided and scheduled for any such objection.

4978333

10

## VII. CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order in substantially the form of the proposed form of order annexed to this Objection modifying and reducing the claim pursuant to 11 U.S.C. § 502(b)(6) and granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: November 10, 2015         By: /s/    Edmond M. George
                                                        Edmond M. George, Esquire
                                                        Michael D. Vagnoni, Esquire
                                                        Angela L. Baglanzis, Esquire
                                                        OBERMAYER REBMANN MAXWELL & HIPPEL LLP
                                                        One Penn Center, Suite 1900
                                                        1617 JFK Boulevard
                                                         Philadelphia, PA  19103
                                                        Telephone: (215) 665-3140
                                                        Facsimile: (215) 665-3165
                                                        *Counsel to the Debtors*